O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **RODERIC CAIN**, | § § § | |
| *Petitioner*, | § § | |
| v. | § § | Civil Action No. 5:06-cv-160 |
| | § § | Criminal No. 5:03-cr-667-2 |
| **UNITED STATES**, | § § § | |
| *Respondent*. | § § § | |

**OPINION & ORDER**

Pending before the Court is Petitioner Roderic Cain's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. [Civ. Dkt. No. 1].

I.   PROCEDURAL BACKGROUND AND RELEVANT FACTS

On October 30, 2003, Petitioner was found guilty by a jury of possession with the intent to distribute in excess of 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). [Cr. Dkt. No. 165]. He was subsequently sentenced to 151 months imprisonment. *Id.* at 2. On June 29, 2005, the Fifth Circuit affirmed Petitioner's sentence, [Cr. Dkt. No. 183-84], and the U.S. Supreme Court thereafter denied his Petition for Writ of Certiorari. [Cr. Dkt. No. 187].

On October 31, 2006, Petitioner filed the § 2255 Motion now before the Court, claiming that he suffered ineffective assistance of appellate counsel, in violation of his Sixth Amendment

rights, because counsel failed to bring to the Fifth Circuit's attention facts in the record that would have compelled resentencing.

## II.   DISCUSSION

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "Claims of inadequate representation which are not raised before the district court cannot be raised on direct appeal . . . [but rather] . . . have been relegated to later petitions under 28 U.S.C. § 2255." *United States v. Brown*, 591 F.2d 307, 310 (5th Cir. 1979). The standard governing ineffective assistance claims was established by the Supreme Court in *Strickland*; specifically, a party claiming ineffective assistance must show (1) that trial counsel's performance fell below an objective standard of reasonableness, and (2) that the defendant suffered prejudice as a result. *Id.* at 687.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that "any fact other than a prior conviction that [is] necessary to support a sentence exceeding the maximum authorized by the facts, established by a plea of guilty, or a jury verdict, [must be either] admitted by [the] defendant or proved to a jury beyond a reasonable doubt." 543 U.S. 220, 244 (2005). In the remedial portion of the *Booker* opinion, the Court declared the Federal Sentencing Guidelines advisory, rather than mandatory. *Id.* at 259.

According to the jury, the amount of marijuana involved in Petitioner's offense was "in excess of 1,000 kilograms." Nevertheless, finding that a greater quantity of marijuana was involved, the sentencing court sentenced Petitioner pursuant to §2D1.1(c)(3) of the Guidelines, which calls for an enhanced offense level of 34 where a violation of 21 U.S.C. §§ 841(a)(1) and § 841(b)(1)(A) involves between 3,000 and 10,000 kilograms of marijuana. Thus, because

Petitioner's offense level was based on facts not found by a jury, the sentencing court committed *Booker* error.

Although appellate counsel argued *Booker* error on appeal, because Petitioner failed to preserve his objection at sentencing, the Court of Appeals reviewed his argument for "plain error." [Cr. Dkt. No. 184]; *see also United States v. Walters*, 418 F.3d 461, 463-63 (5th Cir. 2005). Under this standard, Petitioner bore the burden of showing that the sentencing court's error affected his "substantial rights;" that is, he was required to show that the prospect of a lesser sentence under an advisory Guideline scheme was sufficiently probable as to "undermine confidence in the outcome.'" *United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005) (citing *United States v. Dominguez-Benitez*, 542 U.S. 74 (2004)).

Per the plain error standard, the Fifth Circuit affirmed Petitioner's sentence because he "fail[ed] to demonstrate that the district court would have reached a significantly different result [*i.e.*, would have imposed a lesser sentence] under an advisory [G]uideline scheme." [Cr. Dkt. No. 184 at 2]. Although Petitioner's counsel, in his brief, may have failed to demonstrate prejudice, the appellate *record* clearly "demonstrate[s] that the district court would have reached a significantly different result" under an advisory scheme.

At the sentencing hearing, the sentencing judge stated that because Petitioner's conduct was "terribly out of character," the Court "was trying to be creative with the sentencing." [Sentencing Tr. at 6]. The Court went on to declare that the "sentence [called for by the Guidelines] for a first-time offender is horrific and just so inconsistent with [Petitioner's] life."[1] [Sentencing Tr. at 16]. It is difficult to imagine stronger evidence that the sentencing judge would have imposed a

---

[1] Along with these remarks, the sentencing judge also rejected Petitioner's request for a "minor role adjustment" to his sentence, [Sentencing Tr. at 5], and noted that the government likely could have obtained an increase in Petitioner's sentence for obstruction of justice had the government sought it, [Sentencing Tr. at 3]. Nevertheless, the sentencing judge *still* believed that the 151 month sentence was horrific. This reflects the degree to which the sentencing judge viewed the Guideline minimum as excessive.

3

lesser sentence had he believed the Guidelines to be advisory. Indeed, the Fifth Circuit regularly relies on such remarks (or the absence thereof) in sentencing transcripts in determining whether *Booker* error calls for remand and resentencing. *See*, *e.g.*, *Walters*, 418 F.3d at 465-66; *Mares* 402 F.3d at 521-22. Under plain error review, a sentencing judge's silence will usually preclude relief. *United States v. Pineiro*, 410 F.3d 282, 286 (5th Cir. 2005). However, affirmative statements by the sentencing judge that indicate a desire to impose a lesser sentence is precisely the kind of evidence that determines the fate of a *Booker* challenge on direct appeal . . . unfortunately, before the Fifth Circuit appellate counsel failed to mention the aforementioned remarks by the sentencing court.

This Court is currently without the aid of an appellate opinion sufficiently explanatory to determine whether the sentencing court's remarks were considered by the Fifth Circuit. Thus, the Court does not know for certain *specifically* why the Fifth Circuit rejected Petitioner's claim, but it gathers that such was the result of counsel's failure to reference the sentencing transcripts.

Appellate counsel filed Petitioner's appellate brief on January 31, 2005. The first case in which the Fifth Circuit articulated how *Booker* is to be applied in this circuit was *Mares*, which was issued in March of 2005. 402 F.3d at 517 ("[T]his is the first sentencing decision rendered by this court since the Supreme Court issued *Booker* . . . ."). Thus, at the time counsel filed Petitioner's appellate brief, the Fifth Circuit had not yet expressly declared prejudice to be a prerequisite to resentencing per *Booker*. As such, the only explanation counsel might advance for his omission is that, at the time he filed on behalf of Petitioner, the Fifth Circuit had not yet formally indicated that the contents of trial transcripts could be so dispositive. This explanation would not persuasive.

*Mares* cannot be read in a contextual vacuum. Rather, that decision was prompted by a groundbreaking Supreme Court opinion of which every criminal defense attorney with a pulse cannot help but be aware. In the last paragraph of *Booker*, the Supreme Court noted that:

> we must apply today's holdings—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review. That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because *we expect reviewing courts to apply ordinary prudential doctrines, determining, for example,* whether the issue . . . *fails the "plain-error" test.*

*Booker*, 543 U.S. at 268 (emphasis added) (internal citations omitted).

Indeed, even absent the Supreme Court's explicit guidance in *Booker*, it is a "*general rule* that a constitutional error does not automatically require reversal of a conviction . . . ." *Ariz. v. Fulminante*, 499 U.S. 279, 306-07 (1991) (emphasis added) (Rehnquist, J., dissenting). Rather, "the Court has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless." *Id.*; *see also Robertson v. Cain*, 324 F.3d 297, 304 (5th Cir. 2003) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967) ("On direct appeal, when faced with a constitutional violation, a court must reverse the judgment of the court below unless the constitutional error is harmless . . . .'"). This is particularly true regarding Sixth Amendment errors, of which *Booker* error is a species. *See*, *e.g.*, *Clemons v. Mississippi*, 494 U.S. 738 (1990); *Satterwhite v. Texas*, 486 U.S. 249 (1988); *Rose v. Clark*, 478 U.S. 570 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673 (1986); *Moore v. Illinois*, 434 U.S. 220, 232 (1977); *Brown v. United States*, 411 U.S. 223 (1973); *Coleman v. Alabama*, 399 U.S. 1 (1970).

Thus, competent appellate attorneys are well aware that claims of trial court error almost always turn on whether an appellant can satisfy "ordinary prudential doctrines," like the plain error or harmless error tests, both of which require a showing that the appellant either did or did

not (depending on where the initial burden lies) suffer materially as a result of the given error. *See Pineiro*, 410 F.3d at 285; *United States v. Walters*, 418 F.3d 461, 463 (5th Cir. 2005) ("inquiry under harmless error . . . is the same as with plain error, except burden falls on the government, not the defendant." (citing *United States v. Olano*, 507 U.S. 725 (1993))).

Although the case law *presumes* certain errors harmful without a showing of actual harm—so called "structural defects," *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2563 (2006)—a majority of constitutional errors do not give rise to such a presumption. As such, an appellate attorney who assumes that a given error need not be prejudicial in order to compel relief on direct appeal, and thereby fails to brief the appellate court thoroughly, does not act reasonably on behalf of his client.[2]

Based on the foregoing, the record as it currently stands requires a government response. *See* 28 U.S.C. § 2255 Proc. R. 4(b). The Court **ORDERS** as follows:

1. The Clerk shall serve a copy of the Motion, Petitioner's memorandum in support thereof, and this Order to the United States Attorney for the Southern District of Texas, Attention: Jose Flores, Assistant U.S. Attorney, P.O. Box 1179, Laredo, Texas 78042.

2. The United States Attorney shall file an answer to Petitioner's §2255 Motion within 30 days, and shall forward a copy of its response to Petitioner by certified mail, return receipt requested. Such answer should comply strictly with Rule 5 of the Rules Governing § 2255 Proceedings.

---

[2] The Court notes that even if counsel cannot be deemed ineffective for failing to point the Fifth Circuit to evidence in the record so strongly evidencing prejudice, the question would then arise as to whether it was unreasonable for counsel not to file a supplemental brief upon the issuance of *Mares*. *See Richardson v. United States*, 477 F. Supp. 2d 392, 398 (D. Mass. 2007) ("The scale and scope of the *Booker* sea change was of such magnitude that [counsel's] failure to file a supplemental brief was objectively unreasonable . . . [and] cannot be said to be tactical.").

3. If the United States Attorney elects to answer by filing a dispositive motion (*i.e.*, motion to dismiss or for summary judgment,) Petitioner shall file an answer within thirty (30) days of the date reflected on the certificate of service. If Petitioner fails to timely comply, the Court may dismiss the cause for want of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

The Clerk will provide a copy of this Order to the parties.

IT IS SO ORDERED.

Done this 6th day of July, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**